Ron, this case on the docket is pursued at 16-0329. Kenneth Knott v. Woodstock Farm & Fleet, Incorporated, dealing business with Williams Farm & Fleet, Incorporated. Defendant, Mr. Kennedy, I believe all are doing on behalf of the defendant. Defendant, Mr. Gammon, and Green are doing on behalf of the defendant.  Mr. Green. Your Honors, good morning. My name is Dan Green, and I represent Terry Knott. The reason that we're here is because Terry was deprived of his day in court when it was determined that he was judicially stopped from seeking damages for a knee injury that he sustained. In doing so, the defendant reaped a windfall on the technicality. We're asking this court to revisit the application of judicial estoppel. At the summary judgment stage, there's no clear evidence that Terry Knott should be judicially stopped from pursuing this case. The fact of the matter is that the record on appeal contains only scant evidence on this issue. At this stage, the court is obligated to look at all evidence, or lack thereof, in the light most favorable to Terry Knott. The circuit court was wrong when it made the requisite finding that Terry acted with an intent to deceive the court. Being that this is a ruling on motion for summary judgment, the standard before us is de novo. Rulings that deprive litigants of their day in court are drastic, draconian measures. We're here asking the court to take a pragmatic approach and give Terry a chance to pursue his case on the merits. Now, this case started in April of 2013. Terry hurts his knee on the defendant's premises, sought conservative treatment in the hopes that he'd get better. In July of that year, Terry files for bankruptcy through a lawyer. About a month later, when that conservative treatment on the knee didn't work out, Terry undergoes surgery on his knee. From this point forward, he continues to undergo injections and will eventually need that knee replaced. In October of that year, Terry's bankruptcy attorney filed an amended schedule disclosing a potential claim for damages as to his knee injury. What does that mean, possible claim versus? What does that even mean? It's like a sentence fragment. What does it mean? Certainly that could have been better put, but in the context of the record and in the context of where we're here, what it means is that Terry told his bankruptcy attorney that he had a case, that he had a claim, and all that we can glean from the record is that when you look to Terry's conduct and Terry's intent, that information was disclosed. There's a brief filed by Mr. Terasi on behalf of the trustee of the estate of Knott. Is that the bankruptcy trustee of the estate of Knott? Yes, it is. I believe there are some mischaracterizations that it was filed on behalf of the trustee. It states it's on behalf of the trustee, but I know that their office does not, in fact, represent that trustee and it should not be interpreted as such. And, frankly, the Amicus brief raises, at best, a distraction that references facts and raises issues that are not contained in the record on appeal and, at worst, makes speculative meandering and bizarre accusations. Either way, it doesn't get us any closer to a fair result in this case. One of the things raised in that brief and also raised, I think, in the other brief is the blue brief is standing. Does the trustee have standing as opposed to your client in this case? As this matter stands before this court, the issue of standing is not before this court. The fact of the matter is the record on appeal demonstrates that the bankruptcy was closed in January of 2014. This matter was filed June of that year, and there was no issue of standing before this court. Well, you have standing at least for $15,000 worth. Yes. What about the remainder of the money? The remainder of the money is within, if anything different is to be done with that, is within the realm of the bankruptcy court, and the rights to pursue the remainder of that money are really all that we're here to discuss today. Has the bankruptcy court been given notice of this litigation? Yes, and again, I would urge the court to limit its analysis to what is contained in the record on appeal, but the fact of the matter is since this matter has come up on appeal, that has been reopened. In fact, my office does in fact represent the trustee to proceed with this case, however it proceeds once this court eventually makes its ruling. So you represent both the trustee in bankruptcy and the plaintiff? Yes, with respect to pursuing and recovering the maximum amount of damages here. Yes. But again, I would urge the court to limit its analysis to the facts contained within the record on appeal. Did the amended schedule indicating the claim, the possible claim, was that filed before the defendant was discharged? Yes, it was. That was filed on October 29, 2013. The case is not discharged until January of the next year. Okay. And then in fact it did take another six months for suit to be filed to seek damages in this matter. The only information that can be gleaned from what we have in the record on appeal with respect to Terry's behavior is that he acted as any normal person would during the circumstances. He hoped that his injury was nothing, then he hoped it healed quickly. Litigation was not his knee-jerk reaction and he must have seen it as a nuisance, not some sort of asset. It got worse and eventually he had to have surgery. At some point he talked to his lawyer about it. Just like any lay person would be entitled to do, Terry relied on that lawyer to do what needed to be done with the information that Terry provided. Do you know about the, I think it's five factors, that are supposed to be determined by Terry in convincing evidence? The elements of judicial assable? Yes. Were any or all of those established by your opponent? Well, a few of those elements, for instance, element number three is that we've got separate judicial or quasi-judicial administrative proceedings. Certainly there's no question that that exists here. Certainly there's no question that the first element, for instance, that a party took two positions exists here. Pardon? Certainly the first element that a party took two positions exists. With respect to the second and the fourth element that this case really turns on, that those positions are factually inconsistent and that those positions were taken intending for the trier of fact to accept the truth of the facts as alleged. There's no clear and convincing evidence that Terry took any two positions that were factually inconsistent with one another, and there's certainly no evidence that he intended the trier of fact. And beyond that, intended to deceive the court, which is what needs to be found in order for Terry to be judicially stopped from pursuing this case. Along those lines, your opponent cites Crystal as authority, or at least persuasive authority. Yes. Is that case on point? That case is not on point. Crystal, first of all, is a Pennsylvania case from the 3rd District. If this court is looking anywhere for persuasive authority, that analysis should begin and end at Seymour. Crystal is a case where there's a much more complicated set of facts about a lease purchase and a dispute, whereas here we've got a potential claim that was communicated to a lawyer and then that lawyer ran with it from there. Crystal is a much more involved analysis that should not be persuasive on this court. What's the demand? I'm sorry? What's the demand in the case? The settlement demand. The settlement demand currently stands at $500,000. It's a new replacement, a future new replacement that will be needed. But, again, I don't know that that, as it stands with the analysis of how judicial estoppel should be interpreted, don't know that that information is. I was just curious to see why this case is going as far as it has, if the claim that only you can recover on behalf of your client is $15,000. Well, as to that, it wasn't until very recently, after the appeal was filed, that the bankruptcy estate was real. Until then, Terry owned the claim. There was no action on behalf of the bankruptcy estate to seek any recovery. But, as it stands, that full amount is still recoverable, whether it go to Terry or whether it go to the bankruptcy estate. Now, in Seymour, the Supreme Court seemed to reject what it saw as certain presumptions or inferences from federal cases as far as deliberate manipulation was involved. Do you see that the trial court did that here? Did the trial court presume? Absolutely. Manipulation? The trial court made improper inferences from facts and presumed that deceitful intent existed on the part of Terry. In fact, defendants' brief acknowledges that there were only two real facts that could be considered when looking to whether deceitful conduct and deceitful intent existed, and it was the nature of the disclosure and the timing of that disclosure. Any inferences beyond that were extrapolated and were improper, particularly at the summary judgment stage. The fact of the matter is that there certainly are many available circumstances that could have played out, could have existed, could exist, that got us to this point. At the summary judgment stage, we are entitled to the most favorable interpretation that exists. And the circuit court's very analysis, which any examination of the transcripts of argument before the circuit court, shows that the circuit court struggles with, was there intent, was there not intent? What happened? How did we get here? I don't know. The case was initially argued before the circuit court in August of 2015. At that point, the circuit court could not resolve the issue. Importantly, again, August of 2015 is before that Supreme Court opinion in Seymour came down. After that hearing, the circuit court was unable to make a ruling and remanded the matter for further briefing with respect to the issue of intent alone. Now, the court can be quoted as saying, if intent is a factor that I must consider, I cannot fine for the defendant, and wanted further briefing regarding the issue of intent. Now, within the time that the court made that ruling and the time that the court eventually made its ultimate ruling in favor of the defendant on this case, that Seymour opinion came down, unequivocally answering the question of how intent needs to be looked at in circumstances like this to determine whether judicial estoppel should be applied. And despite the court's hesitance at the outset, hesitance which demonstrates that certainly there are innocent interpretations available, the court decided to rule against Gary Knott and somehow find not only that obviously intent was an important factor, but find that there was somehow clear convincing evidence that Terry acted with an intent to deceive. We simply do not have, there's no examination of the facts of this case that would demonstrate that there's clear and convincing evidence  Just so I'm clear, this was a motion for summary judgment on an affirmative matter? Or was it a summary hearing on a 2619? It was a motion for summary judgment on judicial estoppel that Terry should be judicially stopped from pursuing this case. Normally a motion for summary judgment is a motion wherein, if it's filed by the defendant, the argument is that the plaintiff has to arguably establish facts which would support the rendition of judgment in favor of the plaintiff. That's what the classical, typical summary judgment is. You just said that this is a summary judgment based upon a defense, an affirmative matter that precludes whatever right you might have for some sort of remedial relief. Yes. So, was this a hearing on a 2619 without evidence being presented other than affidavits and depositions and documentation? Yes, I believe so. Okay. Did it at any time, was there stipulations as to facts? Certainly there were stipulations as to material facts, yes. Well, I thought you just, which material facts? There are in the initial summary judgment motions which are contained in the. . . Put it another way. Yes. You just argued essentially that there are material issues of fact based upon the presumptions that are supposed to be invoked whenever a motion for summary judgment is made which are supposed to inure to your benefit. Yes. So, let's not talk about the other material issues of fact that supposedly would support the judgment. Let's talk about the material issues of facts that would inure to your benefit which would supposedly preclude the entry of judgment against you. The fact that Terry brought this information to his attorney, the fact that nothing exists to demonstrate an intent to deceive the court, the fact that we are entitled to a presumption of whether this happened by issue of mistake or inadvertence or whatever it may be. What about the court's comment that, well, your affidavit, your client's affidavit, doesn't say that he didn't intend to defraud anybody or words to that effect? It would be nice if the affidavit was crafted in a manner that were self-serving. Yes. But the affidavit sets forth facts that demonstrate that Terry did not act with an intent to deceive, that Terry was forthcoming at every stage, and that's all we need. Your time's up. You'll have a chance to make your vote. Thank you. Thank you, Your Honor. Thank you. Mr. Osborne. Good morning, Your Honor. Good morning. David Osborne on behalf of the defendant, I believe, Woodstock Farm and Fleet. As the plaintiff pointed out in his brief, the issue of the application of judicial estoppel in the bankruptcy context is a hot topic. I think particularly so because of the recent decision of the Illinois Supreme Court in the Seymour case, which was initially in this court. I want to start by distinguishing Seymour because that sort of resets the landscape for this entire area of the law. And I think it's very important to set out why Seymour went the way it did and why that doesn't have any application here. In the Seymour case, the question was, do you have a duty to report the claim or not? And in that case, the key fact was that the injury took place after the Chapter 13 bankruptcy had been filed. And at least according to the Supreme Court and the trustee in that case, there was at least some question as to whether there was a duty in the first place. The trustee affirmatively testified that she told the debtor, in not so many words, that he didn't need to report it. His attorney testified that the trustee told him that he didn't need to report it, that he only needed to report liquidated lump sum recoveries in excess of $2,000. And of course, because the case was pending, he didn't have any recovery. So he didn't feel like he needed to report it. In this case, there's absolutely no question that the plaintiff knew that he had to report this claim. Well, in Seymour, were there inconsistent positions taken? Well, if you take the lack of a report of the claim to be inconsistent with the assertion of the claim, then yes, they were inconsistent. Okay. How is the labeling or the amendment of a schedule indicating that there is a claim that's extant, inconsistent with prosecuting the claim six months after one is discharged from bankruptcy? It's inconsistent because, as the trial court put it, the phrase possible claim versus with nothing after the versus would seem to indicate that there is no possible claim. Didn't it cite the statute, though? Yes. Well, the exemption statute. It talks about a bodily injury claim. Personal injury claim. Right. Of the debtor. Right. Right. So if I say, you know, possible claim versus based upon a personal injury to me, am I not disclosing that I've had an injury, that I have a claim, a possible claim regarding that injury? I mean, if it just said possible claim versus without anything else, that's pretty ambiguous sentence fragment, as I said earlier. But if you tie that to the fact that the statute that cited the specific section relates to a exemption for bodily injury to the debtor. Right. And doesn't that tell a bankruptcy trustee, a bankruptcy judge, creditors in the bankruptcy case, that there is a possible bodily injury claim that's out there? I suppose unless you know that statute, you'd have to read the statute. I think just the fact that there's a possible claim basically communicates the same idea. I mean, after all, if it's a personal injury claim or it's a defamation claim, it doesn't matter. It needs to be disclosed. Essentially what he's doing is he's putting the ball in the trustee's court. The trustee now has to do some investigation in order to understand what this means. How is that inconsistent with filing the claim? Well, it's inconsistent in the sense that it's much closer to no report than it is to a disclosure of the claim. You consider yourself a reasonable person? I do. Well, I consider myself a reasonable person, and I don't consider that it's so much closer as you do. And for purposes of the motion for summary judgment, when we're talking about how close something is and reasonable minds differ, summary judgment isn't supposed to be entered. And so when you said it earlier before Justice Burke asked you a question, you said it seems like this. And I don't think a motion for summary judgment is supposed to be when something seems like it is. Well, the trial court is supposed to exercise its discretion in this regard. No, it's not. Put it another way. Tell me what the discretion is that it's supposed to exercise its discretion upon. For the second part of the Seymour test, the court is supposed to exercise its discretion in terms of looking at all the facts and circumstances of the case, whether it indicates whether the culpability lies closer to inadvertence or on the further end of the continuum as to purposeful conduct. Could you agree that that exercise of discretion isn't supposed to take place until the five elements have been established? Correct. Well, I thought I was discussing the element that related to whether or not the party to be charged took inconsistent positions. And it seems more to me that it's not inconsistent than apparently it seems to you. Well, it's certainly inconsistent with his intent to pursue this claim because it signals a lack of intent to pursue the claim or a possibility that there might be some claim out there that he's going to pursue. The bankruptcy rules and the case law, which have interpreted it, have made pretty clear that on these schedules you are to disclose the facts that you have. Of course, sometimes you don't have all the facts. Maybe the case isn't on file. Maybe you don't know the exact identity of the defendant. But you're charged with disclosing those facts that you have. And the facts that he had were that his knee was injured. He was injured in a traumatic accident. He was at a retail store, which he knew the name of, that he was suffering great pain. He had been in a knee brace. He had communicated with the store's insurance company. There's no serious dispute that he knows he has a claim and he knows he has a claim against the owner of this store, and he didn't disclose it. That's the inconsistency. So your bottom line is he didn't disclose enough. He didn't disclose enough, right. Okay. And that, and I'll let you finish in a second. Sure. That's the pivotal point. Right. So when Justice McClaren, I think, asked counsel at the outset, what does the phrase that you submitted, what does that mean? Right. And your position is it means relatively nothing, given the facts that the plaintiff had at the time he initially filed his bankruptcy, but also at the time that he filed in October of 2013 the amended schedule. And that in the absence of saying, look, it's this injury that occurred approximately in this day, and the would-be defendant, maybe I don't know who owns Farm and Fleet, but I know that's where the injury took place. And if he didn't do that, that's what creates the intent to defraud. Is that basically your position? Right. And, in fact, if the court were to find otherwise, that the phrase possible claim versus and this statutory reference is enough to meet his burden to disclose what he has required by law to disclose. Well, that isn't what we're deciding. We're not deciding whether he had to disclose it, because if the trustee had requested further information, I think the trustee would have been on very good grounds to suggest that I need more, and you need to present more. The question before this court is whether or not the information that was given ultimately resulted in taking two different positions upon which this individual derived a benefit from. We're not here to decide what quantum of information is required under the statutes. Our duty is to determine whether or not there are inconsistent positions taken, such in the first case versus this case, and you're talking about compliance with a statute as being evidence of inconsistencies, and they're not. Right. And so the argument in support of that line of thought is that any disclosure would meet his burden. That if he had said instead of possible claim versus, he had just said anything's possible, that would be some kind of a disclosure. It would be in this part of the schedule where he's supposed to disclose a claim, so he could say I'm disclosing the fact that there is a possible claim because I did write something, I did file something. Well, your counterfactual conditional is a valid, reasonable argument to make in response to what I said, but it doesn't change the fact that notifying the court of a possible claim, which it probably should have made further inquiry on, is or is not an inconsistent position. In Seymour, there was no notification. In our case, there was. Well, the initial petition in July did not disclose anything. That's true. And there are no facts in this record to explain why that was not disclosed at this time. He admits in his affidavit that he knew he had a claim in October, but he doesn't explain why he didn't know he had a claim when the pizza ovens fell on him. And if the trial court is supposed to apply the various presumptions in favor or inferences in favor of the plaintiff, how do you rationalize all these factors in such a way as to establish that there was an inconsistent position upon which a benefit was derived, which based upon, I believe, the language indicated that he was, the benefit that he was going to be deriving was $15,000, which seems to be consistent with his position now. So I'm curious also about was this a summary judgment on a 619, or was it a non-evidentiary hearing on a 619? How would you characterize this? This was a motion for summary judgment. This is my understanding of the procedural history. It was a motion for summary judgment. I think the court in Seymour, the Supreme Court, mentioned that and didn't seem to condemn the prospect of using the summary judgment procedure to decide this question. It did indicate that it's typically decided under a 2619, which I wouldn't disagree with. But it seems that for all intents and purposes the standard was the same. I mean, the facts here are simple. The facts here are undisputed. And the court was just simply asked to determine the effect of these undisputed facts. It's absolutely undisputed. He knew he had claim. He had far more detail than he disclosed in this, in these amended schedules. So this was not a typographical error. There were two different disclosures that were verbatim. All of the facts and circumstances indicate that this is an intentional effort to delete material disclosures from the bankruptcy court. And the only possible motive for that was, as the Crystal Court pointed out, to create a safe harbor to protect the plaintiff from judicial estoppel. And I would submit that if that's acceptable, then why wouldn't every debtor simply put this on his amended schedule and then toss it to the trustee to inquire further if he wanted more detail, knowing full well that probably nine times out of ten he's not, and just simply because of the... He's subject to sanctions. And that's what your argument almost sounds like. You're in front of the bankruptcy court arguing for sanctions on behalf of either the trustee or the debtors who have to go in and try to dig out the information when somebody makes a nebulous statement like this. And the issue is, again, as Justice McClaren said, in our context whether this is enough to create an inconsistent position in light of, you know, the standard that we use, you know, for summary judgment, and also in light of clear and convincing evidence. I'm going to answer the inconsistency question this way. Certainly on the initial disclosure, there was no disclosure of the claim whatsoever. That's clearly inconsistent. The question then becomes does the amended schedules cure that inconsistency? And our position is that what's stated on the amended schedules is the functional equivalent of no disclosure whatsoever. What benefit was derived from the initial representation or presentation that would create a judicial estoppel? Because if you keep referring to the initial filing, and from what I could tell from the record, there is nothing to indicate that based upon the initial filing and the amendment thereafter, this person wasn't going to, quote, unquote, get a benefit that is inconsistent with any position that he allegedly ultimately raised below or in the court. I'm just saying the initial petition is part of the context. It's part of the facts and circumstances that the court is to take into account. This is what Seymour tells us. The court is to look at all of the facts and circumstances and then make a judgment in its discretion. Unless it's a judicial admission that precludes amendment, I don't see how it could have any relevance or materiality other than if it was determined that there was, in fact, the five elements established, then that information previous that we're referring or you're referring to now might have some materiality relative to whether or not there was a defraud or an attempt to defraud or misrepresent. I'm saying that when he goes in on the amended petition, he's behind the eight ball. He knows he hasn't disclosed his claim. He knows he has a claim. He knows he has a duty to disclose it. So why not full disclosure? Why not at least partial disclosure? Why not at least say, I hurt my knee? Why not say something that would give the trustee and the creditors something to go on? If there are no further questions. No, thank you. Thank you, Your Honors. Thank you. Mr. Breen? Yes. Is this the fault of Mr. Geraci's firm? I would not go so far as to say that it is, but I would go so far as to say that the record is clear that my client, Terry, brought this to the attention of Mr. Geraci's firm. Didn't he sign all these documents? Certainly he did. Did he read them? He read them, likely with his bankruptcy lawyer, likely sitting there saying, hey, go ahead and sign this. You look at it. Any layperson, anybody who hires a lawyer is entitled to believe that that lawyer has their best interest in mind and did it the right way. Was his best interest to perhaps hide a claim? No. Which way is it? Was he giving full disclosure on that amended schedule and saying, here, sign this because I put everything in here that you should be doing? Or was he trying to hedge his bets and protect a claim? Which is it? At this point in the proceeding, at the summary judgment level, we are obligated to look at the facts and circumstances and give Terry the most innocent interpretation available, and that's what it is. It's that Terry was as forthcoming as he could be and had no intent of any kind to engage in any sort of deceitful conduct. What did he tell his lawyer, do we know? That's not within the appellate record, no. Okay. He's responsible for his lawyer's actions, especially when he signed the documents, correct? Certainly, the party's bound by his lawyer's actions. It's a pretty obtuse statement, isn't it, a possible claim? Well, it is. And to go back to the first part of that question, I think it's important to point out that there's a difference between actions and intent. And while a party's bound by whatever actions his lawyer takes, in a situation like this where we've got to look to intent, the party doesn't automatically absorb, even if we're saying that there was intent that was imperfect on the part of the lawyer, which I'm not willing to acknowledge, the party does not absorb that intent. How hard is it to make a full disclosure? If this is the claim they're talking about, to say a bunch of ovens fell on my knee and I may file a lawsuit, how hard is it to say that as opposed to a possible claim versus which, to me, to this day, I don't even know what that possibly means? Well, obviously, the difference in terms of effort, it's not hard to do that. But there are numerous explanations as far as why this exists. Inadvertence, mistake, a draft went out. Is any of that in our appellate record? It's not, and that's why we're entitled to the most favorable interpretation of what's left. But the absence of that evidence is held against the party that didn't put it in the record. We can't come up and say, I win because it's not in the record. So, I mean, you keep saying, you know, we could interpret this as mistake, et cetera, but where is any indication of that? When we look to the affidavit, we see Terry say that. At every point, he was forthcoming. He communicated this information to who he thought. But we don't know what he told us. That's why I asked you, what did he tell his lawyer, and we don't know that. He told his lawyer all the facts and circumstances that he knew. If that's true, then all he told his lawyer was, I have some unknown claim. And? Yes, sir. I mean, I don't want to put words in your mouth, but we're sort of stuck with this nebulous, what does that mean? I have a claim. Claim to what? Against whom? What's the value? I mean, those are really the issues in a bankruptcy is, who has money that these creditors are entitled to, and if it's, you know, a couple dollars, it's $25 versus a half a million dollars, is it worth my while to pursue? So that's why I keep asking, what did he tell his lawyer? What do we know? And I think it's also important to point out that that claim evolved, that this was – when it happened, this was not a half a million dollar incident. Right, but we know it was October. That was after his surgery. Things aren't going well. He has substantial hospital bills. And he knows who the defendant is. And as the affidavit indicates, he did communicate, and the record indicates that he communicated that information to his lawyer. Where does it say that? A conclusion in an affidavit, I communicated with my attorney, is not the same as I told my attorney it was Farm and Fleet and that my hospital bills were already over $200,000 or whatever it was. You see the difference? One is a conclusion. I told my lawyer everything. That's a conclusion. It's a supposition. As opposed to, I told my lawyer, and I used all your time, so I'll give you a few minutes to collect your thoughts and maybe respond. Yeah, I mean, I do believe that we are entitled to a favorable interpretation that the degree to which we don't have a verbatim quote as to what was communicated to that lawyer or the times that Terry discussed the disclosure with him, we are entitled to a favorable interpretation that Terry did not intend to see. Two is a continuum between full disclosure and no disclosure. No disclosure where we'd probably apply generally estoppel, and full disclosure where it would never apply. I mean, in this case you're saying, in Crystal the quote was, status of franchise is now in litigation. That was what was found to be not, you know, it was found to be inconsistent. And you're saying this is, at some point in time I take you across over some threshold into the area of disclosure and not being inconsistent, correct? And if we're only looking to that statement, what's on the schedule, yes, but we've got to look at all the facts and circumstances and understand that more communication, plus the very existence of an amended schedule with no obligation to make such an amended schedule. Or, I'm sorry, I misspoke there. Not with no obligation, but with nothing changing that would put Terry in a position other than him making the step forward and saying, hey, we ought to disclose this possibly. So you're saying he had no obligation to file an amended schedule? No, no, no, that's not what I'm saying. Because obviously a party in bankruptcy is under a duty. I'm saying the circumstances didn't change. There was no procedure in the bankruptcy other than an affirmative act on the part of Terry to make such a disclosure and understanding that obligation. Very good. There's one other case on the call. We'll be in for a short recess. Thank you, Your Honor. Thank you.